REID W. ARNOLD, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

(Claim No. 24703.)

Third Department, November 23, 1938.

*Barrett, Simon & Wolf* [*Edward W. Barrett* of counsel], for the appellant.

*John J. Bennett, Jr., Attorney-General* [*Leon M. Layden* and *Joseph L. Delaney, Assistant Attorneys-General,* of counsel], for the respondent.

McNAMEE, J. The general consideration in this case is the extent to which peace officers, in settled communities and in the dark, may use our highways for shooting revolvers while driving an automobile at an excessive rate of speed and while voluntarily pursuing an unknown person who has failed to stop upon their signal to do so.

Four State troopers were in uniform and armed about ten o'clock at night on August 19, 1933. They came upon a Nash sedan and signaled the unknown driver to stop. He failed to do so, but increased his speed. Thereupon three troopers in an automobile and one on a motorcycle pursued the Nash car for a distance of seven or eight miles along a Saratoga lake highway, at a rate of speed of sixty to sixty-five miles an hour, with sirens sounding.

Claimant owned and occupied a cottage near Saratoga lake, and there were from seventy-five to one hundred other cottages within a distance of five hundred feet. At least the sergeant, who was driving the pursuit car and who was in charge of the other troopers, was familiar with the neighborhood where claimant's cottage and the other houses in the settlement were located — in fact, was " acquainted with all of the places along the lake." Claimant's house was lighted at the time, as was his porch, and it is a fair inference that the other houses were, for it was the height of the recreational season at the widely known Saratoga lake, and it would be reasonable also to infer that several hundred people were in the immediate vicinity.

Claimant and his wife heard the troopers coming, and, thinking a fire had broken out, went into their yard when the troopers' car was about 400 feet away and coming around a curve toward them. At this time the sergeant in charge was driving at the speed mentioned with one hand and shooting with the other. Because of the curve, as the automobile approached, claimant's lighted premises, as well as claimant, were in direct line of the troopers' fire. Eleven shots were fired by the troopers, and one hit and injured the claimant while thus standing in his own yard. Only two of the bullets otherwise discharged hit even the car that was being pursued. The occupants of the fleeing car fired back in the direction of the troopers, and only two of their bullets hit the car. Claimant was the only person injured. The court below found on proper evidence that two of the troopers did no shooting, and that it was one of the other two who shot the claimant.

Claimant filed a claim against the State on the ground that the conduct of the trooper who shot him was negligent, and the Court of Claims held that no negligence was shown, and dismissed the claim. It is an appeal from that judgment that is under review and presents the question here.

It was argued before this court that one of the occupants of the Nash car was in fact a felon, was later arrested and convicted. When or where the crime was committed was not proved or found, and it was not shown that the troopers at the time of shooting knew the occupants of the Nash sedan or that any of them was guilty of a crime. The sergeant was the only trooper sworn, and he testified that he saw the Nash sedan, directed a police whistle to be blown to stop, and that " we wanted to question the occupants." There is no evidence that he had any information of wrongdoing or any reason for the questioning. Thus it cannot be urged that the " pursuit of felons" affected the conduct of the troopers in any degree. In so far as they knew, when the chase began, no offense had been committed, except a failure to obey their signal to stop for " questioning."

There is no showing in this officer's testimony, the only testimony on the question, that the occupants of the Nash sedan began the firing, or that the troopers began firing in self-defense. The reasonable inference is otherwise. It is significant that two of the troopers fired no shots, although three of them were riding in the front seat of a touring car, with the windshield open.

From the whole case it is evident that the pursuit at reckless speed was voluntary and without impelling cause, as was the firing on the part of the troopers. If any of them was guilty of negligence that guilt was present when they began to shoot in a populated

neighborhood along a public highway in the dark, at a time and place and under circumstances 'where no officer would be justified in committing an act which would endanger the safety and lives of citizens, to enforce his personal will. When a State trooper stops a person or a car on a public highway he should be prepared to assign a legal reason for doing so. He may not do so with the sole objective of "questioning" people. There should be an underlying legal reason and cause to justify his act. And this is so despite such duty as a driver may have to stop for apparent cause or to furnish information. (Vehicle and Traffic Law, § 11, subd. 4.) When a State trooper drives an automobile around a curve at sixty-five miles an hour with one hand, and begins to shoot a revolver with the other hand, in the circumstances shown here, without caution and without serious cause, such an act partakes of the nature of a circus performance, and not that of public protection or orderly government.

This court recently held that troopers who drove into a private driveway of crescent shape, fourteen feet from the road, in order to head off a truck they were pursuing, and in doing so caused injury to private citizens lawfully there, the troopers were guilty of negligence, and that the State was liable for their conduct. (*McArdle* v. *State of New York*, 251 App. Div. 773.) And the Court of Appeals denied leave to appeal to that court from our decision. (276 N. Y. 690.) It would be inconsistent, as well as unreasonable, to hold that troopers, in the performance of an act conceived by them to be their duty, may not recklessly drive their automobile on private property to the injury of others, while pursuing a truck, but that they may voluntarily pursue and, for trivial or no legal reason, shoot into private property and injure the owner within a few feet of his own door. We regard the conduct of the troopers who took part in the shooting in question as guilty of gross negligence.

The judgment should be reversed and the damages suffered by the claimant should be fixed by this court, with costs.

CRAPSER and HEFFERNAN, JJ., concur; HILL, P. J., and BLISS, J., dissent on the ground that there was no negligence shown. The officers were following a car, in a sparsely settled section, in which criminals were fleeing. The latter threw overboard a safe which had been stolen. The criminals began firing at the officers, who returned the fire. Claimant, hearing the gunfire, went outside and received his injury.

Judgment of the Court of Claims reversed on the law and facts, with costs. The damages suffered by the claimant are fixed by this court at $5,000.

The court reverses the findings of fact in the decision of the court below numbered 32, 34, 35, 36 and 38, and all findings of fact denominated conclusions of law.

And the court makes a new finding of fact that the State Troopers Rose and Green did not exercise a reasonable degree of care toward the claimant in the use of their revolvers on August 19, 1933, and were guilty of negligence in shooting the claimant.

And the court finds as a fact that the claimant suffered damages in the sum of $5,000 by reason of the negligence of the State trooper who shot him.